# Mathers and Boynton *versus* Hegarty.

### Location of Land by Calls in the Survey.

1. Although the true location upon the ground of a tract of land returned surveyed, is, ordinarily, a fact for the jury, yet where there are no marks upon the ground, and there is no other evidence of an actual survey than is contained in the return, the true location must be ascertained from the situation of other tracts for which it calls, and the jury are to be governed in the inquiry by legal principles. In such cases, the finding becomes a deduction from rules of law rather than the simple ascertainment of a fact.

2. A series of surveys made by one surveyor, upon warrants issued upon the same day, dependent upon each other in succession, calling for each other, and returned to the office at the same time, must be regarded as forming one block, and be located together as a body.

3. Where the true location of the tract of land in dispute is to be ascertained by a survey more than sixty years old, and without the aid of marks upon the ground—which must, therefore, be located by its calls for other surveys—it is not error to instruct the jury, that, as a rule applicable to an undisputed state of facts, it cannot be severed from the body of which it was returned a part, and for which it calls, when, by adhering to such body, it answers the greater number of its calls, and preserves the distances, figures, and quantity, even though one of the calls must be entirely disregarded by this rule.

ERROR to the Common Pleas of *Clearfield county.*

This was an action of ejectment, brought by Samuel Hegarty, against Robert Mathers and Jonathan Boynton, to recover about 120 acres of land in Woodward township, Clearfield county. The plaintiff claimed under a warrant in the name of Mary Niel, dated January 21st 1794, surveyed July 8th 1794, and patented to Henry Philips, April 27th 1796, with a regular assessment and payment of taxes from 1811 down to the bringing of the suit.

[Mathers and Boynton *v.* Hegarty.]

The defendant claimed under a warrant in the name of Thomas Maston, dated January 21st 1794, surveyed October 22d 1794, and patented to John Warder, November 8th 1804, with a regular assessment and payment of taxes from 1812 down to the bringing of this suit.

These warrants, with some fifty others, each calling for 400 acres, were all issued upon the same day to Judge Wilson, by whom the purchase-money and fees were paid. They appear to have been divided into two blocks: the one commencing by a leading warrant in the name of Thomas Niel, and calling for surveys of 1784, in the name of James Alexander and John Gill, on the south side of Clearfield Creek, followed by Mary Connell, calling for Thomas Niel, and by Mary Niel, calling for Mary Connell; the other commencing with a leading warrant in the name of Peter Browne, and calling for the north-east corner of Thomas Reed's 200 perches below the mouth of the Little Clearfield Creek, followed by some twenty warrants calling for each other respectively, proceeding toward the block on Clearfield Creek, and including the Thomas Maston warrant calling for Joseph Clark on the west and north.

The block in which the Mary Niel tract is found is called the Philips land, and the one in which the Thomas Maston tract is found is known as Turner, Warder & Co.'s lands.

The main point in this suit was as to the proper location of these two surveys which interfered, and much of the difficulty in the cause arose from the fact that the Mary Niel tract could not be carried to all its calls, by the official courses and distances.

A more particular statement of the facts of this case, together with a draft showing the situation of the parties and the extent of the alleged interference, may be seen in a former report of this case—7 Casey 348—in which the judgment of the court below was reversed, and a *venire de novo* awarded for the reasons there given.

On the second trial, the court below (GAMBLE, P. J.) charged the jury "that both surveys are now, from lapse of time, presumed to have been regularly made, upon the ground, according to their official return, that the Mary Niel tract is one of a block or chain of surveys calling for each other, and is properly located, adjoining the Mary Connell survey, according to the courses and distances of the official return; that the Maston survey, having been made on the 22d of October 1794, more than three months after the Mary Niel survey, is to be regarded as a junior survey, and, if there be an interference, must give way to the former; and that if they believed that the land in dispute is within the boundaries of the Mary Niel tract, thus located upon the line of Mary Connell, the plaintiff was entitled to recover."

This charge was excepted to by the defendant, before verdict.

1 WR.—5

[Mathers and Boynton *v.* Hegarty.]

The jury found for the plaintiff all the land in the Mary Niel survey as located from the point of the Mary Connell survey, giving to the Mary Niel tract its official courses and distances therein.

Judgment having been entered on this verdict, the defendant sued out this writ, and assigned for error here the instructions of the court below as above stated.

The case was argued by *J. B. McEnally,* for plaintiff in error, citing and relying on Mock *v.* Astley, 13 S. & R. 382; Gratz *v.* Hoover, 7 Harris 232.

The opinion of the court was delivered, June 28th 1860, by

STRONG, J.—The only real question raised by this record is, whether the court below was right in instructing the jury that the Mary Niel survey was to be located upon the line of that of Mary Connell, instead of leaving to them to find the proper location. Doubtless what is the true location upon the ground of a tract of land returned surveyed, is generally a question of fact to be determined by a jury. But when there are no marks upon the ground, when there is no other evidence of an actual survey than is contained in the return of survey, and when consequently the location must be ascertained from the situation of other tracts for which it calls, the jury are to be guided in their inquiry by legal principles. Their finding then becomes rather a deduction from rules of law, than the simple ascertainment of a fact.

When the case was here before, we indicated, as clearly as we could, the rules of law applicable to the facts which then appeared in evidence. It was then said that, as between the Mary Niel and the Thomas Maston surveys, the former was to be located without regard to the latter, which was the younger. That inasmuch as her lines and quantity were fixed by the patent, they could not be altered or changed so as to accommodate a younger survey, and that her courses and distances must be laid off from that starting-point which enables her to answer most of her calls. We also said that if all her calls cannot be answered, as many must be as possible, and that if she was one of a body or block of surveys, her position must be determined by the location of the block. Applying these principles to the case as it now stands, it would seem to be free from difficulty. It is manifest that the Mary Niel was one of a body of surveys, of which that of Thomas Niel was the leader. Her warrant called for that of Mary Connell as an adjoiner, and Mary Connell's called for that of Thomas Niel. All the warrants were issued on the same day, are dependent upon each other in succession, and the returns of survey call the one for the other. True, the sur-

[Mathers and Boynton *v.* Hegarty.]

veys were made on different days not distant from each other, but this does not militate against their having been located as one body. It rather tends to show the honesty of the surveyor. It is vain to deny that surveys thus made by one surveyor upon warrants thus calling for each other returned to the land office on the same day, and belonging to the same owner, are to be regarded as one block, and located together. The location of the Thomas Niel tract is fixed with certainty by the surveys of Gill and Alexander which it adjoins, and the position of which is not disputed. As therefore the Mary Niel survey calls for Mary Connell, and Mary Connell calls for Thomas Niel, the location of the Mary Niel would be fixed without difficulty, were it not for the fact that it also calls for the Sheaff and Wharton tracts, part of another body of surveys lying 310 perches east of the Mary Connell. It is certain that she cannot adjoin those tracts, and also that of Mary Connell. If she is to answer both these calls, her distances are entirely variant from those of the survey as returned, and the quantity of land immensely enlarged, or the configuration of the tract is entirely destroyed. This the law will not allow. Either the Sheaff and Wharton call must be abandoned, or that for Mary Connell. By adhering to the latter, the Mary Niel answers to most of her calls, and disregards but one, for the Sheaff and Wharton tracts are upon the same line, the line of 1784. On the other hand, if that line be adhered to, it involves the necessity of disregarding the call for Mary Connell on the west, and the call for Turner & Co. on the north unless the courses and distances are entirely changed and the figure of the tract distorted. It also separates the survey from the body to which it belongs. Under these circumstances, it is clear that the law requires such a location as the court directed. In the instruction given to the jury, the ascertainment of the location was not taken from them. They were only told in effect what was the rule to be applied to an undisputed state of facts, a state of facts evidenced by the different returns of surveys, and in a case where the location of the tract in dispute was to be found, without the aid of any marks on the ground. We do not call in question the rule that it is for the jury to locate a survey. All that we decide is that, in such a case as the present, where the question is what is the true location of a survey more than sixty years old, of which there are no visible monuments, and which must be located by its calls for other surveys, it is not error for the court to say to the jury that it cannot be severed from the body of which it was returned as a part, and for which it calls, when, by adhering to such body, it answers the greater number of its calls, preserves its figure and its distances, and also its quantity, even though the consequence be that another call must be disregarded. We understand the court

[Mathers and Boynton *v.* Hegarty.]

below as having said no more. The fact that such a location caused an interference with a junior survey, is of no consequence whatever. The true question is, what was the location before the junior survey had any existence? What it was then it must always continue to be. It follows that there is no error in this record.

The judgment is affirmed.